## State of Maine *vs.* Maurice R. Fogg.

### Oxford.    Opinion October 5, 1910.

*Indictment.   Liquor Nuisance.   Intoxicating Liquors.   Persons Liable.   Resort. Criminal Law.   Instructions.   Revised Statutes, chapter 22, sections 1, 2, 4.*

Objection that an indictment for maintaining a liquor nuisance should have been found and drawn under Revised Statutes, chapter 22, section 4, instead of section 2, can be taken, if at all, only by demurrer or motion in arrest of judgment.

An indictment charging that the accused at specified times maintained a specified place used for illegal sale and illegal keeping of liquors, where liquors were sold for tippling purposes, and that the place was a resort where liquors were sold, given away, drank, and dispensed and a common nuisance, etc., is sufficient under Revised Statutes, chapter 22, sections 1, 2, defining common nuisances, and prescribing punishment for keeping them.

In a trial for maintaining a liquor nuisance, it was not error to instruct that, if one having control of a place knowingly permits it to be used as a place of resort, if he has authority over it to prevent or permit that use and he permits it, then in the eye of the law he maintains it, because, the offense charged being a misdemeanor, all connected with the prohibited acts and conditions are principals.

An allegation that one "did keep and maintain" a liquor nuisance applies either to one who occupies or controls the occupation and procures or permits illegal use of the place.

The offense of maintaining a liquor nuisance under Revised Statutes, chapter 22, section 2, and section 4, are distinct offenses, and a conviction of one would not bar indictment for the other.

In a trial for maintaining a liquor nuisance, testimony as to what was found on the place, indicating the presence of intoxicating liquors, sounds of disturbance at night on the Fourth of July, and acts of an intoxicated man who was neither a boarder nor visitor at the place, was properly received to connect the accused with control of the place and the acts done and conditions found there, as was evidence of shipments from a particular city of liquors to him up to the time when whiskey bottles, with labels bearing the name of that city, were found at the place.

In a trial for keeping a liquor resort, the words "commonly" and "habitually" used in a requested instruction, applied to the resort, were properly omitted as mere tautology, since "resort" means a place of "frequent assembly."

In a trial for maintaining a liquor nuisance, an instruction defining, nega-
tively and affirmatively a common nuisance, was properly refused as being
substantially covered by the Justice's statement of the transactions relied
on by the State, accompanied by the interrogatory to the jury, "Has that
evidence satisfied you beyond a reasonable doubt—that is, given you a
clear and abiding conviction—that for that time at least and on the day
following that was a place of resort to which men went without invitation,
and, having gone there, liquors were drank and dispensed?"

On exceptions by defendant. Overruled.

The defendant was indicted at the October term, 1909, of the
Supreme Judicial Court, Oxford County, for maintaining a liquor
nuisance. Verdict, guilty. The defendant excepted to several
rulings during the trial.

The case is stated in the opinion.

The indictment, omitting formal parts, is as follows:

"The grand jurors for said State upon their oath present, that
Maurice R. Fogg of Sumner, in said county of Oxford, on the
fifteenth day of August, in the year of our Lord one thousand nine
hundred and eight and on divers other days and times between that
day and the day of the finding of this indictment, at Hartford, in
the county of Oxford aforesaid, did keep and maintain a certain
place, to wit: A boarding house known as the Corn Shop Board-
ing House situated in said Hartford, and near the depot of the
Maine Central Railroad, known as East Sumner depot, a tenement
there situate, then and on said divers other days and times there
used for the illegal sale and for the illegal keeping of intoxicating
liquors, and where on that day and on said divers other days and
times intoxicating liquors were sold for tippling purposes, and which
said place was then and on said divers other days and times there a
place of resort where intoxicating liquors then and on said divers
other days and times were there unlawfully kept, sold, given away,
drank and dispensed, and which said place, being so used as afore-
said, was then and there a common nuisance, to the great injury
and common nuisance of all good citizens of said State, against the
peace of said State, and contrary to the form of the Statute in such
case made and provided."

*Ralph T. Parker*, County Attorney, for the State.

*William H. Gulliver, and Matthew McCarthy*, for defendant.

SITTING :   SAVAGE, PEABODY, SPEAR, CORNISH, KING, BIRD, JJ.

PEABODY, J.   This was an indictment against the respondent for
maintaining a statutory common nuisance, defined by section 1,
chapter 22, R. S.

The case is before the Law Court on exceptions to the rulings of
the presiding Justice, refusing to quash the indictment, to give
instructions requested, and admitting certain testimony offered by
the State, also to parts of the charge to the jury.

The ground upon which the respondent's counsel requested that
the indictment be quashed and based the exception to the court's
refusal, is that it should have been technically found and drawn
under section 4 instead of section 2 of chap. 22, R. S.   Such
objection to the indictment could only be available to the respond-
ent, if at all, by demurrer or a motion in arrest of judgment.
*State* v. *Hurley*, 54 Maine, 562; *State* v. *Burke*, 38 Maine,
574.   But the indictment is clearly sufficient in charging the
offense defined in secs. 1 and 2 of chap. 22, R. S.   *State* v.
*Arsenault*, 106 Maine, 192; *State* v. *Lang*, 63 Maine, 215; *State*
v. *Kapicsky*, 105 Maine, 127.

The same reason is urged in support of the exception to that part
of the charge which defined what is meant by maintaining a place
of resort; but it was not error to instruct the jury that a person
having control of a place knowingly allows it, permits it to be used
as a place of resort, if he has authority over it to prevent that use
or to permit that use and he permits it, then in the eye of the law
he maintains it; because the offense charged, being a misdemeanor,
all connected with the prohibited acts and conditions are principals.
*State* v. *Sullivan*, 83 Maine, 417; *State* v. *Murdock*, 71 Maine,
454; *State* v. *Ruby*, 68 Maine, 543; *Commonwealth* v *Wallace*,
108 Mass. 12; and because the words "did keep and maintain,"
used in the indictment in reference to the respondent, apply either
to one who occupies or to one who controls the occupation and
procures or permits the illegal use of the place. *State* v. *Arsenault*,
106 Maine, 192; *State* v. *Ryan*, 81 Maine, 107; *Commonwealth*
v. *Kimball*, 105 Mass. 465.

It is the further contention of the argument in support of these exceptions, that under the instructions, the respondent might be convicted of aiding in the maintenance of a nuisance, the offense described in sec. 4, and that a judgment rendered against him under the indictment in this case could not be pleaded in bar of a subsequent prosecution for the former offense, and that upon the doctrine of *State* v. *Burgess*, 40 Maine, 592, such instructions were erroneous and prejudicial to the respondent. The offenses are undoubtedly distinct, *State* v. *Frazier*, 79 Maine, 95; *State* v. *Stafford*, 67 Maine, 125; *State* v. *Ruby*, 68 Maine, 543; and a conviction of one of these would not bar an indictment for the other, *State* v. *Coombs*, 32 Maine, 529.

They are statutory offenses and by legislative intent a person by the same act or group of acts may violate both and be punished for both or, as the court by EMERY, C. J., say, "Nevertheless some acts may sometimes constitute both offenses and when they do, the offenses are still different, though the acts are the same, and the perpetrator of the acts may be punished twice, once for each offense."

The case presents only the questions whether the place described in the indictment was a place of resort where intoxicating liquors were unlawfully kept, sold, given away, drank and dispensed on the third day of July, 1908, and whether the respondent then and there kept and maintained the place.

The respondent admits that on that night intoxicating liquors were there drank or given away, and so the exceptions are in their application confined to the relevancy of evidence as proof of the character of the place, and of the connection of the respondent with it at that time.

The first exception claims that it was error to receive the testimony of witnesses as to what was found in the boarding house and corn shop indicating the presence of intoxicating liquors, the sounds of disturbance on the night of the fourth of July, and the acts of an intoxicated man, who was neither a boarder nor a visitor in the boarding house, as it had not been made to appear that the respondent was in control of the place; but as circumstances con-

sistent with the charge against the respondent relied upon by the State to connect him both with the control of the place and with the acts done and conditions found there on the day in question, we think the evidence was admissible.

By the same rule of evidence the testimony of the expressman, the subject of the second exception, is admissible, as to shipments to the respondent of numerous packages from Dayton, Ohio, up to the night of July third, when whiskey bottles labelled Dayton, Ohio, were found in the boarding house.

As to the fourth exception the court could decline to give the requested instructions "except so far as given in the charge to the jury," if the substance of those which were correct legal propositions was covered by the charge.

The first was given in substance properly omitting the adverbs "commonly" and "habitually" as mere tautology. According to Webster's Dictionary the natural meaning of the word "resort" is "a place of frequent assembly."

The second, requesting a specific negative and affirmative definition of a common nuisance, was substantially given by the Justice by a statement of the transactions of the night of the fourth of July and the day following, upon which the State relies, "that some half dozen more or less of men went there and went there to drink, and that they went there without invitation," with the concurrent interrogatory to the jury, "Has that evidence satisfied you beyond a reasonable doubt, that is, given you a clear and abiding conviction that for that time at least, and on the day following that was a place of resort to which men went without invitation, and having gone there, liquors were drank and dispensed?"

The remaining requested instructions were properly refused, the fourth because it could not be given without material modification, and the fifth, sixth, seventh, eighth and tenth because they are not strictly accurate statements of the law of the case.

*Exceptions overruled.*